## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER TECCO,

        *Plaintiff,*

    v.

U.S. FACILITIES, INC.,

        *Defendant.*

CIVIL ACTION
NO. 17-3675

**PAPPERT, J.**                                        **February 15, 2018**

## MEMORANDUM

Peter Tecco was fired by U.S. Facilities, Inc. ("USF") after he reported USF's alleged wrongdoing with respect to its work on the ventilation system in the Philadelphia Municipal Services Building and the elevator braking system in the Philadelphia Criminal Justice Center. Tecco contends that his termination was related to his reports and that firing him violated Pennsylvania's Whistleblower Law, 43 Pa. Const. Stat. Section 1341 *et seq.* USF filed a motion to dismiss (ECF No. 6) in response to which Tecco amended his Complaint (Am. Compl., ECF No. 7). USF now moves to dismiss the Amended Complaint (Mot., ECF No. 9) arguing principally that Tecco has not alleged that he reported any "wrongdoing," as that term is defined in the Whistleblower Law, on USF's part. The Court denies the Motion.

I

Tecco began working for USF on January 4, 2017 as an Operating Heating, Ventilation and Air Condition (HVAC) Engineer. (Am. Compl. ¶¶ 10, 11.) He was responsible for monitoring and inspecting HVAC equipment, elevator machine rooms and fire safety equipment for USF's clients. (*Id.* ¶ 17.) Tecco inspected HVAC

1

equipment at the Philadelphia Municipal Services Building ("MSB") on January 6, 2017. (*Id.* ¶ 18.) He determined that the air handling units were in "poor condition" because they were damaged and had dirty coils which he felt violated the Uniform Construction Code. (*Id.*) Tecco reported the violations to Sherwood Gase, another USF employee, who told him that USF did not have the money to fix the units. (*Id.* ¶ 19.) Tecco then met with Carmen Diaz, MSB's Manager, on February 3 to discuss the issue. (*Id.* ¶ 20.) Diaz showed Tecco a list of employee complaints pertaining to the air quality in the MSB. (*Id.*) After receiving this information, Tecco again inspected the units and concluded a second time that they were in poor condition. (*Id.* ¶ 21.) He subsequently met with Diaz and Zachery Jones, USF's Maintenance Manager, to express his concerns. (*Id.*) At that meeting, Jones told Tecco to "keep your mouth shut." (*Id.*) Tecco conducted a final inspection at MSB on February 10, decided again that the units were in poor condition and reported his view to Jerry Merrigan, Philadelphia's Public Property Senior Deputy Chief. (*Id.* ¶ 25.) At Merrigan's instruction, Tecco sent a report concerning the deficiencies with the MSB's air handling units to Diaz and Jones on February 13. (*Id.*) He was fired three days later for what he alleges was "retaliation for his good faith complaints concerning wrongdoing." (*Id.* ¶ 27.)

II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in

2

fact)." *Id.* (citation omitted). While a complaint need not include detailed facts, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

Pennsylvania's Whistleblower Law makes it unlawful for an employer to "discharge, threaten or otherwise discriminate or retaliate against an employee…because the employee…makes a good faith report…to the employer or

appropriate authority an instance of wrongdoing or waste by a public body…." 43 Pa.

Cons. Stat. § 1423(a).[1] USF's Motion turns on the adequacy of Tecco's allegations of

"wrongdoing," which is defined in the statute as "[a] violation which is not of a merely

technical or minimal nature of a Federal or State statute or regulation, of a political

subdivision ordinance or regulation or of a code of conduct or ethics designed to protect

the interest of the public or the employer." 43 Pa. Cons. Stat. § 1422.

USF argues that Tecco's Amended Complaint should be dismissed because he

failed to specifically identify the law USF allegedly violated. (Mot. at 6–12.) USF relies

primarily on two Pennsylvania state court cases—*Riggio v. Burns*, 711 A.2d 497 (Pa.

Super. 1998) and *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062 (Pa. Cmwlth. Ct.

2013)—both decided at summary judgment. In *Riggio*, the plaintiff was a neurologist

who alleged that she was fired after reporting to the Vice President of Clinical Affairs

at the Medical College of Pennsylvania that the Chief of Neurosurgery was not

physically present while residents performed surgery, in violation of the Health Care

Facilities Act and Medical Practices Act. *Riggio*, 711 A.2d at 498–501. The trial court

granted summary judgment for the employer, finding that it was not a public body and

therefore the neurologist was not an "employee" under the Whistleblower Law. *Id*. at

499. The plaintiff appealed and the Superior Court affirmed the lower court's decision,

albeit on different grounds. *Id*. The Superior Court determined that the plaintiff failed

to allege a "wrongdoing" under the Act because the regulatory statutes she relied on

were "too general and vague to permit the conclusion that a violation had occurred…."

---

[1]     USF apparently does not contest that it receives money from a public body to perform work
for or provide services to that public body and is therefore an "employer" under the statute.

*Id.* at 501. The court reasoned that the acts did not specifically define prohibited conduct and thus it was not clear whether any violation occurred. *Id.*

In *Evans*, a nurse alleged that she was fired in retaliation for her report that another nurse administered methadone to an intoxicated patient in purported violation of the Controlled Substance, Drug, Device and Cosmetic Act ("the Drug Law"), 35 Pa. Stat. §780-111, and an "unwritten" nursing home policy. *Evans,* 81 A.3d at 1072. The trial court granted summary judgment for Jefferson and the plaintiff appealed. The Commonwealth Court affirmed, holding that Evans had not shown a "wrongdoing." *Id.* Under the Drug Law, methadone can only be "administered or dispensed" by a licensed practitioner, pharmacist, registered nurse, licensed practical nurse, or any other healthcare professional authorized by Federal and State law. *Id.* (citing 42 C.F.R. § 8.12(h)(1)). Evans reported that a registered nurse administered methadone after the program director ordered the nurse to do so. The court found that the program director's order was not relevant; consistent with the statute a registered nurse had administered the methadone. Without a violation of the statute, there was no "wrongdoing." *Id.* The court further felt that a report of an *unwritten* policy forbidding the administration of methadone to intoxicated individuals does not constitute a report of wrongdoing under the Whistleblower Law. *Id.* at 1073.

Unlike the cases upon which USF relies, *Stoneback v. ArtsQuest,* No. 12-3286, 2012 WL 4963624 (E.D. Pa. Oct. 17, 2012) and *Rankin v. City of Philadelphia*, 963 F. Supp. 463 (E.D. Pa. 1997) addressed at the motion to dismiss stage the adequacy of plaintiffs' allegations of wrongdoing under the Whistleblower Law. In *Stoneback,* the plaintiff alleged that the defendants fired her in retaliation for reports she made to two

supervisors and human resources.  2012 WL 4963624, at *1.  The plaintiff, without

citing to any particular statute, regulation or code, reported that she believed that

ArtsQuest was fraudulently advertising its products as German-made when in fact the

goods were delivered in Chinese shipping containers.  *Id.*  ArtsQuest moved to strike

the whistleblower claim and the court denied the motion because the plaintiff "need

only plead facts sufficient to permit a reasonable inference that Defendants violated

some statute, etc., she need not specifically identify [the statute]."  *Id.* at *2.

Similarly, in *Rankin*, the plaintiff was a nursing home employee who noticed

"various problems including inoperable heating and cooling systems, defective sprinkler

systems, corroding waste lines, unsanitary kitchen conditions, deficient fire code

separations, and uncertain asbestos conditions."  *Rankin,* 963 F. Supp. at 467.  The

plaintiff spoke to the nursing home's executive director, the Philadelphia Health

Department's maintenance director and the liason between the City and the nursing

home about the fire code violations and asbestos problems.  *Id.*  Within a few months,

the plaintiff was fired and alleged that it was in retaliation for his efforts to disclose

and correct the violations.  *Id*.  In its motion to dismiss, the defendants argued that the

plaintiff failed to establish that his reports concerned "wrongdoing" because no

violations actually existed.  *Id.* at 473.  The court denied the motion, holding that

defendants' argument was appropriate at summary judgment, not the motion to

dismiss stage.  *Id.*

Here, Tecco claims that he reported to Gase, Diaz, Jones and Merrigan that the

air handling units were broken or in poor condition, causing, among other things, poor

air quality.  Tecco believes that the conditions of the units had the potential to

deteriorate the building's air quality, endangering those working there. Further, the MSB's Manager told Tecco that several employees in the building complained about the air quality. Taking these allegations as true, these facts are sufficient to permit a reasonable inference that there was an actual violation of some statute or regulation.

IV

Tecco also alleges that in February 2017, he inspected the Philadelphia Criminal Justice Center ("CJC"). (Am. Compl. ¶ 22.) He contends that the "employees in charge of monitoring and implementing the necessary secondary safety braking system *may* not have been performing their duties as expected of them" and was concerned that 34 Pa. Code § 405.1 was also being violated. (*Id.* ¶ 24 (emphasis added).) He reported this information to CJC Manager David Wasserbach and USF Shift Engineers Mark Underwood and Wallace Garvin. (*Id.*) While Tecco may not be required to enumerate a violation of a specific statute or regulation, he has not alleged any facts to support his speculative concern that the employees were not performing their duties properly or how such conduct could violate, even generally, any statute or regulation. His allegations are insufficient to permit a reasonable inference that there was an actual violation of the law.

Tecco will not be permitted to amend his Complaint again with respect to the CJC's elevator braking system because at this point it would be futile for him to try. In his Amended Complaint, Tecco makes the same uncertain and unsubstantiated allegations regarding the purported wrongdoing as he did in his initial Complaint, adding only his conclusion that the employees' possible inaction violated 34 Pa. Code § 405.1. (Am. Compl. ¶¶ 22-24; Compl. ¶¶ 22-24, ECF No. 1.) Tecco may only proceed on

the theory that he was fired in retaliation for reports about the MSB's air handling units.

An appropriate order follows.

BY THE COURT:


**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.